1
2
3
4
5
6
7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FREDERICK WALKEY

11              Petitioner,                    No. 2:12-cv-1354 CKD P

12        vs.

13   GARY SWARTHOUT,

14              Respondent.              FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254, together with an application to proceed in forma

18   pauperis.

19          Examination of the in forma pauperis application reveals that petitioner is unable

20   to afford the costs of suit.  Accordingly, the application to proceed in forma pauperis will be

21   granted.  See 28 U.S.C. § 1915(a).

22          In his petition, petitioner challenges parole proceedings occurring March 10, 2010

23   and the fact that the panel that presided over his parole hearing denied petitioner a follow-up

24   parole hearing until 2015.  Under Rule 4 of the Rules Governing § 2254 Cases, the court must

25   conduct a preliminary review of § 2254 habeas petitions and dismiss any petition where it plainly

26   /////

1    appears that petitioner is not entitled to relief in this court.  As indicated below, it is clear

2    petitioner is not entitled to habeas relief.

3             An application for a writ of habeas corpus by a person in custody under a

4    judgment of a state court can be granted only for violations of the Constitution or laws of the

5    United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

6    claim decided on the merits in state court proceedings unless the state court's adjudication of the

7    claim:

8             (1) resulted in a decision that was contrary to, or involved an
              unreasonable application of, clearly established federal law, as
9             determined by the Supreme Court of the United States; or

10            (2) resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the
11            State court proceeding.

12   28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)."[1]  It is the habeas petitioner's burden to

13   show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537

14   U.S. 19, 25 (2002).

15            The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

16   different.  As the Supreme Court has explained:

17            A federal habeas court may issue the writ under the "contrary to"
              clause if the state court applies a rule different from the governing
18            law set forth in our cases, or if it decides a case differently than we
              have done on a set of materially indistinguishable facts.  The court
19            may grant relief under the "unreasonable application" clause if the
              state court correctly identifies the governing legal principle from
20            our decisions but unreasonably applies it to the facts of the
              particular case.  The focus of the latter inquiry is on whether the
21            state court's application of clearly established federal law is
              objectively unreasonable, and we stressed in Williams [v. Taylor,
22            529 U.S. 362 (2000)] that an unreasonable application is different
              from an incorrect one.

23

24   /////

25   _____

26        [1]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds
     for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119 (2007).

1  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

2  law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

3  fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

4  (2002).

5          The court will look to the last reasoned state court decision in determining

6  whether the law applied to a particular claim by the state courts was contrary to the law set forth

7  in the cases of the United States Supreme Court or whether an unreasonable application of such

8  law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court fails

9  to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional

10 or federal law, the Ninth Circuit has held that this court must perform an independent review of

11 the record to ascertain whether the state court decision was objectively unreasonable.  Himes v.

12 Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court

13 applied the correct law, and analyzes whether the decision of the state court was based on an

14 objectively unreasonable application of that law.

15         It is appropriate to look to lower federal court decisions to determine what law has

16 been "clearly established" by the Supreme Court and the reasonableness of a particular

17 application of that law.  "Clearly established" federal law is that determined by the Supreme

18 Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is

19 appropriate to look to lower federal court decisions as persuasive authority in determining what

20 law has been "clearly established" and the reasonableness of a particular application of that law.

21 Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th

22 Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo,

23 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of

24 Supreme Court precedent is misplaced).

25         First, petitioner asserts that the decision to deny him parole in 2010 amounts to a

26 violation of ths Due Process Clause of the Fourteenth Amendment.  The Due Process Clause of

1  the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or

2  property without due process of law.  A litigant alleging a due process violation must first

3  demonstrate that he was deprived of a liberty or property interest protected by the Due Process

4  Clause and then show that the procedures attendant upon the deprivation were not

5  constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60

6  (1989).

7           A protected liberty interest may arise from either the Due Process Clause of the

8  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

9  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

10  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

11  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

12  one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

13  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

14  person to be conditionally released before the expiration of a valid sentence.").  However, a

15  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

16  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

17  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

18           California's parole scheme gives rise to a liberty interest in parole protected by the

19  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

20  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout,131 S.

21  Ct. at 861-62 (finding the Ninth Circuit's holding in this regard to be a reasonable application of

22  Supreme Court authority); Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout

23  v.] Cooke did not disturb our precedent that California law creates a liberty interest in parole.")

24  In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or

25  her current dangerousness.  In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re

26  Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

4

1    In Swarthout, the Supreme Court reviewed two cases in which California

2    prisoners were denied parole – in one case by the California Board of Parole Hearings (Board),

3    and in the other by the Governor after the Board had granted parole.  Swarthout, 131 S. Ct. at

4    860-61.  The Supreme Court noted that when state law creates a liberty interest, the Due Process

5    Clause of the Fourteenth Amendment requires fair procedures, "and federal courts will review

6    the application of those constitutionally required procedures."  Id. at 862.  The Court concluded

7    that in the parole context, however, "the procedures required are minimal" and that the

8    "Constitution does not require more" than "an opportunity to be heard" and being "provided a

9    statement of the reasons why parole was denied."  Id. (citing Greenholtz, 442 U.S. at 16).  The

10   Supreme Court therefore rejected Ninth Circuit decisions that went beyond these minimal

11   procedural requirements and "reviewed the state courts' decisions on the merits and concluded

12   that they had unreasonably determined the facts in light of the evidence."  Swarthout, 131 S. Ct.

13   at 862.  In particular, the Supreme Court rejected the application of the "some evidence" standard

14   to parole decisions by the California courts as a component of the federal due process standard.

15   Id. at 862-63.  See also Pearson, 639 F.3d at 1191.

16   After the Supreme Court's decision in Swarthout, it is clear that the question of

17   whether the Board reasonably applied California's "some evidence" standard in a prisoner's

18   parole hearing does not give rise to a claim for federal habeas relief.  Swarthout, 131 S. Ct. at

19   862-63; see also Miller v. Oregon Bd. of Parole and Post-Prison Supervision, 642 F.3d 711, 716

20   (9th Cir. 2011) ("The Supreme Court held in [Swarthout v.] Cooke that in the context of parole

21   eligibility decisions the due process right is procedural, and entitles a prisoner to nothing more

22   than a fair hearing and a statement of reasons for a parole board's decision[.]") (emphasis in

23   original); Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir. 2011) (under the decision in

24   Swarthout, California's parole scheme creates no substantive due process rights and any

25   procedural due process requirement is met as long as the state provides an inmate seeking parole

26   with an opportunity to be heard and a statement of the reasons why parole was denied); Pearson,

1    639 F.3d at 1191 ("While the Court did not define the minimum process required by the Due

2    Process Clause for denial parole under the California system, it made clear that the Clause's

3    requirements were satisfied where the inmates 'were allowed to speak at their parole hearings

4    and to contest the evidence against them, were afforded access to their records in advance, and

5    were notified as to the reasons why parole was denied.'")

6         In this case, the habeas petition and exhibits attached thereto show that petitioner

7    was represented by counsel at his 2010 parole suitability hearing.  Pet. Ex.O .  The record also

8    establishes that petitioner was allowed the opportunity to be heard at his hearing and received a

9    statement of the reasons why the Board panel decided to deny him parole.  Id.  Petitioner thus

10   received all the process due him under the Constitution.  Swarthout, 131 S. Ct. 862; see also

11   Miller, 642 F.3d at 717; Roberts, 640 F.3d at 1046; Pearson, 639 F.3d at 1191.  Accordingly,

12   petitioner's due process challenge to his being denied parole in 2010 has no merit.

13        Next, petitioner asserts that delaying his next parole hearing five years following

14   the 2010 hearing violates the Ex Post Facto Clause of the Constitution and California Law.

15   California voters recently approved the "Victims' Bill of Rights Act of 2008," otherwise known

16   as "Marsy's Law."  Under California law as it existed prior to the enactment of "Marsy's Law,"

17   indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the

18   parole hearing panel found it unreasonable to expect that parole could be granted the following

19   year, in which case the subsequent hearing could be extended up to five years.  Cal. Penal Code §

20   3041.5(b)(2) (2008).  At his 2010 parole hearing, petitioner was subject to the terms of "Marsy's

21   Law," which authorizes denial of a subsequent parole hearing for a period of up to fifteen years.

22   Cal. Pen. Code, § 3041.5(b)(3).  The shortest interval that the parole hearing panel may set is

23   three years, based on a finding that petitioner "does not require a more lengthy period of

24   incarceration . . . than seven additional years."  Cal. Pen. Code, § 3041.5(b)(3)(c).

25   /////

26   /////

6

1    Petitioner presented his ex post facto claim to all three levels of California's

2  Courts.  Pet. at Exhibits 1-3.  The last court to address the claim in detail was the California

3  Court of Appeal:

4          Petitioner's [ex post facto] challenge to Marsy's Law lacks merit.
           (*In re Russo* (2011) 194 Cal.App.4th 144, 157-159; see also
5          *Gilman v. Schwarzenegger* (9th Cir. Jan 24, 2011, No. 10-15471)_
           F.3d __.)  Even if we were to assume that Marsy's Law creates a
6          risk of prolonged incarceration, any such concern is ameliorated by
           the [parole] Board's ability, on its own or at the request of the
7          inmate, to conduct an advance hearing if circumstances have
           changed such that the inmate is suitable for parole at an earlier
8          time.  (Pen. Code, § 3041.5, subds. (b)(4), (d)(1); *Russo*, at pp.
           158-159.)
9

10  Pet., Ex. 2 at 2.  Because the Court of Appeal's decision with respect to petitioner's ex post facto

11  claim is the last decision where any supporting reasoning is provided, it is that decision the court

12  examines to determine if petitioner is barred from obtaining relief by 28 U.S.C. § 2254(d).

13    Clearly established federal law, as determined by Supreme Court, is as follows

14  with respect to petitioner's ex post facto claims.  A law violates the Ex Post Facto Clause if it:

15  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's

16  punishment greater than when the crime was committed; or (3) deprives a person of a defense

17  available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).

18  A court may find an ex post facto violation if a change in the law "produces a sufficient risk of

19  increasing the measure of punishment attached to the covered crimes."  California Dep't of

20  Corrections v. Morales, 514 U.S. 499, 509 (1995).  The Court has not articulated a specific

21  formula for "identifying those legislative changes that have a sufficient effect on . . . punishments

22  to fall within the constitutional prohibition on [ex post facto laws]."  Id.  However, the court has

23  found that changes that create only the most "speculative and attenuated possibility of producing

24  the prohibited effect" of increasing punishment do not run afoul of the ex post facto clause.  Id.;

25  See Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at

26  /////

1  minimum create "significant risk of prolonging . . . incarceration" to constitute a violation of the

2  Ex Post Facto Clause).

3          The Supreme Court has not directly addressed whether application of "Marsy's

4  Law" to persons convicted prior to its enactment constitutes the sufficient risk of increased

5  punishment prohibited by the Ex Post Facto Clause.  However, the Court has addressed an ex

6  post facto challenge to a change in California law concerning the frequency of parole hearings.

7  In Morales, 514 U.S. at 514, the court found that a 1981 amendment to Section 3041.5, which

8  increased maximum deferral period of parole suitability hearings to certain individuals from one

9  to three years, did not violate the Ex Post Facto Clause.  Among other things, the court found the

10  fact that an inmate could always seek an expedited hearing if the inmate felt that, between

11  scheduled hearings, circumstances had changed to the point that he or she might at that time be

12  found suitable for parole.  Id. at 512-13.  Considering this fact, the Court found: "there is no

13  reason to conclude that the amendment will have any effect on any prisoner's actual term of

14  confinement . . ." Id. at 512.

15          Also, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the

16  frequency of parole hearings for prisoners serving life sentences from three to eight years in the

17  face of an ex post facto challenge.  Again, the Court found it significant that inmates could seek

18  an expedited hearing in the event of a change of circumstances:

19          On the record in this case, we cannot conclude the change in
           Georgia law lengthened respondent's time of actual imprisonment.
20          Georgia law vests broad discretion with the Board, and our analysis
           rests upon the premise that the Board exercises its discretion in
21          accordance with its assessment of each inmate's likelihood of
           release between reconsideration dates.  If the assessment later turns
22          out not to hold true for particular inmates, they may invoke the
           policy the Parole Board has adopted to permit expedited
23          consideration in the event of a change in circumstances.

24  Id. at 256.

25          Here, as indicated above, the changes to the frequency of parole hearings are more

26  extensive than in Morales and Garner and can potentially result in subsequent parole hearings

8

1    occurring as much as fifteen years after the prior hearing.[2]  However, as in <u>Morales</u> and <u>Garner</u>,

2    the parole board concerned, in this case the California Board of Parole Hearings post-"Marsy's

3    Law," has the ability to advance a parole suitability hearing when "a change in circumstances or

4    new information" essentially establishes a reasonable likelihood that an inmate will be found

5    suitable for parole.  Cal. Pen. Code, § 3041.5(b)(4).

6              After reviewing the facts applicable to petitioner's ex post facto claim, the

7    California Court of Appeal's decision rejecting petitioner's ex post facto claim, clearly established

8    federal law as determined by the Supreme Court, and California statutes and regulations related to

9    the frequency with which parole hearings occurring after the first parole hearing must be held, the

10   court finds that the decision of the California Court of Appeal rejecting petitioner's ex post facto

11   claim is not contrary to, nor does it involve an unreasonable application of clearly established

12   federal law as determined by the Supreme Court.  Again, the Court of Appeal found that "Marsy's

13   Law" did not lengthen petitioner's sentence.  This conclusion is not out of line with decisions

14   reached by the Supreme Court in both <u>Morales</u> and <u>Garner</u>, especially in light of the fact that, as in

15   <u>Morales</u> and <u>Garner</u>, the parole board concerned can expedite a suitability hearing if the board

16   believes it is reasonable to assume that the inmate in question will be paroled.[3]  Furthermore,

17   nothing suggests the decision to reject petitioner's ex post facto claim by the Superior Court is

18   based on an unreasonable determination of the facts.  For all of the foregoing reasons, it is clear

19   that petitioner is barred by 28 U.S.C. § 2254(d) from obtaining relief as to his ex post facto claim.

20   \\\\\

21   _____

22      [2]  See <u>Gilman v. Schwarzenegger</u>, 638 F.3d 1101, 1107-08 (9th Cir. 2011) for a detailed
     discussion of the differences between the statutes and regulations at issue in <u>Morales</u>, <u>Garner</u>, and
23   in California post-"Marsy's Law."

24      [3]  Petitioner is informed that there is a 42 U.S.C. § 1983 class action pending in this court
     where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause of the Constitution.  The
25   name of the case is <u>Gilman v. Fisher</u>, CIV-S-05-0830 LKK GGH P and the class of persons
     identified as plaintiffs in that action consist of California prisoners serving indeterminate sentences,
26   who are eligible for parole and who have been denied parole on one or more occasion.  March 4,
     2009 Order at 9.  It appears petitioner is a member of that class.

1    Finally, petitioner asserts application of the terms of "Marsy's Law" to his sentence

2 violates provisions of California's Constitution.  Again, violations of state law do not provide a

3 basis for federal habeas relief.  28 U.S.C. § 2254(a).

4    For all the foregoing reasons, it is plain that petitioner is not entitled to relief under

5 28 U.S.C. § 2254.  Therefore, the court will recommend that petitioner's application for writ of

6 habeas corpus will be dismissed.

7    In accordance with the above, IT IS HEREBY ORDERED that:

8    1.  Petitioner's motion to proceed in forma pauperis is granted.

9    2.  The Clerk of the Court assign a District Court Judge to this case.

10    IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas

11 corpus be dismissed.

12    These findings and recommendations are submitted to the United States District

13 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

14 one days after being served with these findings and recommendations, petitioner may file written

15 objections with the court.  Such a document should be captioned "Objections to Magistrate

16 Judge's Findings and Recommendations."  In his objections petitioner may address whether a

17 certificate of appealability should issue in the event he files an appeal of the judgment in this case.

18 See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

19 certificate of appealability when it enters a final order adverse to the applicant).  Petitioner is

20 advised that failure to file objections within the specified time may waive the right to appeal the

21 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22  Dated: May 31, 2012

23

24    CAROLYN K. DELANEY
    UNITED STATES MAGISTRATE JUDGE

25

26  1
   walk1354.dis